**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **Rahul Shah** ) | **CASE NO. 1:07 CV 1576** |
| ) | |
| **Plaintiff,** ) | **JUDGE PATRICIA A. GAUGHAN** |
| ) | |
| vs. ) | |
| ) | |
| **Mark Hansen,** ) | **Memorandum of Opinion and Order** |
| **District Director, Cleveland Office,** ) | |
| **U.S. Citizenship and Immigration** ) | |
| **Services,** *et al.*, ) | |
| ) | |
| **Defendants.** ) | |

### INTRODUCTION

This matter is before the Court upon defendants' Motion to Dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted (Doc. 7). This case arises out of plaintiff's application for adjustment of immigration status. For the reasons that follow, the motion is DENIED in PART and GRANTED in PART.

### FACTS

Plaintiff Rahul Shah brings this action against defendants Mark Hansen, District Director, Cleveland Office, United States Citizenship and Immigration Services; Alberto

1

Gonzales, Attorney General of the United States; Michael Chertoff, Secretary, Department of Homeland Security; Emilio T. Gonzalez, Director, United States Citizenship and Immigration Services; and Robert S. Mueller, III, Director, Federal Bureau of Investigation, seeking an order compelling defendants to act upon plaintiff's application for adjustment of immigration status.

Plaintiff is a citizen of India with a United States alien registration number.  On December 28, 2003, plaintiff married a United States citizen.  On April 6, 2005,  plaintiff filed an I-485 Application for Adjustment of Status (the "application") with the United States Citizenship and Immigration Services ("CIS").  On that same date, plaintiff's spouse filed the requisite I-130 Petition for Alien Relative (the "petition").  When an alien applies for an adjustment of status, CIS as a matter of course conducts a background investigation of the applicant.  This background investigation includes, among other things, a Federal Bureau of Investigation ("FBI") "name check."

The FBI provides the name check service to federal agencies, congressional committees, the federal judiciary, friendly foreign police and intelligence agencies, and state and local criminal justice agencies. Changes in law and policy since September 11, 2001, have led to a large increase in the number of name checks the FBI is requested to perform each year.  The great majority of these name checks (68%) result in no record being found and are completed within 48-72 hours.  An additional 22% are identified as having no FBI record after a manual name search is completed.  These manual searches are typically completed within 30-60 days.  The remaining 10% of names are identified as possibly being the subject of an FBI record.  In such a case, the FBI record must be located and reviewed.

The name checks are generally processed on a "first-in, first-out" basis. However, CIS has the discretion to order that a name check be processed on an expedited basis.

On April 15, 2005, CIS submitted plaintiff's application to the FBI for a name check. Plaintiff and his wife were interviewed by CIS on September 19, 2005, in connection with the pending petition and application. On September 19, 2005, the I-130 petition was approved. The FBI has yet to complete its name check of plaintiff. As a result, CIS has been unable to further act upon plaintiff's I-485 application. It appears that the FBI name check is the only impediment to a final decision on plaintiff's application.[1]

The Complaint seeks an order compelling defendants to adjudicate plaintiff's application. Plaintiff alleges this Court has jurisdiction pursuant to 28 U.S.C. § 1361 (the mandamus statute) and pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) together with 5 U.S.C. § 555 and § 701, *et seq.* (the Administrative Procedure Act). Defendants move to dismiss for lack of subject matter jurisdiction and for failure to state a claim. Plaintiff opposes the motion.

**STANDARD OF REVIEW**

**Rule 12(b)(1)**

When a court's subject matter jurisdiction is challenged under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the party seeking to invoke jurisdiction bears the burden of proof. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Rogers v.*

---

[1] Defendants mention that, given the length of time the FBI has taken to complete the name check, plaintiff's fingerprints have "expired." It is not clear whether or not plaintiff must submit new fingerprints in order for the processing of his application or the name check to continue.

*Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986). A 12(b)(1) motion to dismiss may constitute either a facial attack or a factual attack. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). Facial attacks question the sufficiency of the jurisdictional allegations in the complaint. *Id*. Thus, those allegations must be taken as true and construed in the light most favorable to the nonmoving party. *Id*. Factual attacks, however, challenge the actual fact of the court's jurisdiction. *Id*. In such cases, the court is free to weigh any evidence properly before it to satisfy itself as to the existence of its power to hear the case. *Id.*; *see also Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

### Rule 12(b)(6)

When considering a motion to dismiss pursuant to Rule 12(b)(6), the district court must accept all of the allegations in the complaint as true and construe the complaint liberally in favor of the plaintiff. *Lawrence v. Chancery Court of Tenn.,* 188 F.3d 687, 691 (6th Cir. 1999). When an allegation is capable of more than one inference, it must be construed in the plaintiff's favor. *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 228 (6th Cir. 1997). However, the complaint must contain "more than the bare assertion of legal conclusions." *In Re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993). "In practice, a ... complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Id.* (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)) (emphasis in original).

### DISCUSSION

Plaintiff seeks an adjustment of his immigration status to that of permanent legal resident. The defendants identify a number of factors that may impede the timely resolution

of a name check but do not assert that any of these factors have affected the processing of plaintiff's name check.  Rather, defendants contend they have no obligation to act on plaintiff's application, much less an obligation to act within a certain period of time.

The Immigration and Nationality Act (the "INA") provides in relevant part that "[t]he status of an alien ... may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence..."  8 U.S.C. § 1255(a).[2]  The implementing regulations further provide:  "The applicant shall be notified of the decision of the director and, if the application is denied, the reasons for the denial."  8 C.F.R. § 245.2(a)(5); *see also* 8 C.F.R. § 103.2(b)(19) ("An applicant or petitioner shall be sent a written decision on his or her application, petition, motion, or appeal.").

Defendants offer several grounds in support of their motion to dismiss:  (1) the complaint fails to state a claim under the Administrative Procedure Act (the "APA"), because the actions complained of are committed to agency discretion; (2) the complaint fails to state a claim under the mandamus statute, because plaintiff cannot demonstrate that defendants have a clear, non-discretionary duty to adjudicate plaintiff's I-485 application within a particular period of time; (3) the federal question statute alone does not provide an independent basis for jurisdiction; and (4) the Declaratory Judgment Act alone does not confer jurisdiction.  The Court will address each of these arguments below.

    **A.**    **Administrative Procedure Act**

---

[2]
> The Attorney General has delegated his authority to administer and enforce the Immigration and Nationality Act to the Bureau of Citizenship and Immigration Services.  8 C.F.R. §§ 1.1, 100.2.

The APA requires, "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). The APA further states when judicial review may be had:

> Right of Review: A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.

5 U.S.C. § 702. The APA also delineates which actions are reviewable:

> Actions Reviewable: Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action.

5 U.S.C. § 704. Agency action "includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). A failure to act as agency action is failure to take a discrete, required action. *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 62-63 (2004).

When review is proper pursuant to the foregoing provisions, the "reviewing court shall compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706. The APA, by its own terms however, does not apply where "(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701(a).

1. <u>Subject Matter Jurisdiction</u>

First, the Court must determine whether or not it possesses subject matter jurisdiction over plaintiff's claim. While the APA does not provide an independent grant of subject

matter jurisdiction, the federal question statute, 28 U.S.C. § 1331, "confer[s] jurisdiction on federal courts to review agency action, regardless of whether the APA of its own force may serve as a jurisdictional predicate." *Califano v. Sanders*, 430 U.S. 99, 105 (1977).  Thus, as a threshold matter, the Court has jurisdiction pursuant to the federal question statute to decide plaintiff's claim under the APA.

Next, the Court must determine whether or not any statute precludes judicial review. 5 U.S.C. § 701(a)(1).  There is a provision in the INA that divests the court of jurisdiction over certain actions.  8 U.S.C. § 1252 is entitled "Judicial review of orders of removal."  It provides in relevant part:

> (B) Denials of discretionary relief
> Notwithstanding any other provision of law ... no court shall have jurisdiction to review --
> (i) any judgment regarding the granting of relief under section ... 1255 of this title, or
> (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158 (a) of this title.

8 U.S.C. § 1252(a)(2)(B).  While the INA does not define "judgment", "decision", or "action", Section 1252 applies, by its own terms, to "judicial review of orders of removal" and  Subsection 1252(a)(2)(B) applies to "denials of discretionary relief."  Because CIS has not issued an order of removal with regard to plaintiff Shah or denied his application, Section 1252 is inapplicable.  *E.g., Paunescu v. INS*, 76 F. Supp.2d 896 (N.D. Ill. 1999) (Section 1252(a)(2)(B) applies only to denials of relief; and, the failure to adjudicate an application is not a "judgment" as that term is used in Section 1252(a)(2)(B)(i)); *see also Totonchi v. Gonzalez*, 2007 U.S. Dist. LEXIS 59003, *10 (N.D. Oh. Aug. 13, 2007) (Wells, J.) (Section

7

1252 is not applicable because a failure to adjudicate does not implicate a "judgment" or a "decision"); *Duan v. Zamberry*, 2007 U.S. Dist. LEXIS 12697 (W.D. Pa. Feb. 23, 2007) (the pace of processing applications is not specified in the statute to be within CIS' discretion, therefore jurisdiction is not eliminated by reason of Section 1252).

There is a "well-settled presumption favoring interpretations of statutes that allow judicial review of administrative action." *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 496 (1991) (finding district court was not deprived of jurisdiction over constitutional challenge to INA by a narrow provision precluding review of denials of applications in deportation proceedings). An act of Congress must provide "clear and convincing evidence" of an intent to preclude review. *Abbott Labs. v. Gardner*, 387 U.S. 136, 141 (1967); *see also Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 67 n.29 (1993) (there is "no reason to think that a District Court would lack the power to order" CIS to adjudicate applications for adjustment of status made by certain aliens pursuant to 8 U.S.C. § 1255a (establishing a scheme by which certain aliens unlawfully present in the United States could apply for temporary resident status and, then, for an adjustment of status to legal permanent resident)). Given the narrow language of Section 1252 itself, the Court cannot conclude that Congress has provided clear and convincing evidence that it intended to divest the district courts of subject matter jurisdiction over an action to compel CIS to act upon an application for adjustment of immigration status.

The Court must next determine whether or not the action complained of is committed to CIS' discretion by law. 5 U.S.C. § 701(a)(2). Under this section of the APA, "review is not to be had in those rare circumstances where the relevant statute is drawn so that a court

8

would have no meaningful standard against which to judge the agency's exercise of discretion." *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993) (internal quotations omitted).  The defendants contend this is one of those rare circumstances.  The *Lincoln* court enumerated the following instances in which the Supreme Court had previously determined no review could be had under the APA:  agency decision not to enforce its own rules; agency decision not to grant reconsideration of an agency decision; and agency decision to terminate an employee in the interests of national security.  None of these decisions are of the same character as that in the instant case.

Many courts have found that CIS has a non-discretionary duty to adjudicate an application for adjustment of status.  *E.g., Tang v. Chertoff*, 493 F.Supp.2d 148 (D. Mass. 2007); *Duan v. Zamberry*, 2007 U.S. Dist. LEXIS 12697 (W.D. Pa. Feb. 23, 2007); *Hu v. Reno*, 2000 U.S. Dist. LEXIS 5030 (N.D. Tex. Apr. 18, 2000);  *Paunescu v. INS*, 76 F. Supp.2d 896 (N.D. Ill. 1999).  However, other courts have found that whether or not to adjudicate an application for adjustment of status is discretionary.  *E.g., Zhang v. Sec'y of Homeland Security*, 2007 U.S. Dist. LEXIS 64754, *14 (N.D. Oh. Aug. 31, 2007) (Lioi, J.) (relying on 8 U.S.C. § 1255(a), which states that the Attorney General *may* adjust status of an applicant in his discretion); *Chehab v. Chertoff*, 2007 U.S. Dist. LEXIS 60424 (E.D. Mich. Aug. 17, 2007) (relying on 8 C.F.R. § 103.2(b)(18), which states a district director may withhold adjudication if an investigation has been undertaken involving a matter relating to eligibility and disclosure of information to the applicant would prejudice the investigation).

The Court finds that the courts such as *Tang* have the better view.  It is not disputed that Section 1255(a) grants the Attorney General (and, as a result, CIS) complete discretion

9

over whether or not to grant an application for adjustment of status. However, nothing in the INA provides discretion over whether or not to act on the application. The implementing regulations support the Court's conclusion. 8 C.F.R. § 245.2(a)(5) ("The applicant shall be notified of the decision of the director and, if the application is denied, the reasons for the denial."); 8 C.F.R. § 103.2(b)(19) ("An applicant or petitioner shall be sent a written decision on his or her application, petition, motion, or appeal."). Moreover, the APA provides that "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). In the absence of a grant of discretion in the INA over whether or not CIS must conclude adjudication of an application for adjustment of status, the Court finds that the APA dictates that CIS must conclude that adjudication.[3]

Finally, for plaintiff's claim to survive under Section 704 of the APA, plaintiff must also demonstrate there has been a final agency action for which there is no other adequate remedy in court. 5 U.S.C. § 704. Whether there has been final agency action is a jurisdictional question. *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1236 (11th Cir. 2003). As stated above, the APA explicitly defines agency action to include the failure to act. 5 U.S.C. § 551(13).

---

[3]

> Defendants also argue that the Court cannot compel the FBI to complete its name check, because that action is committed to the FBI's discretion. While this may be true, *see Azadegan v. Chertoff*, 2007 U.S. Dist. LEXIS 71832, *19-20 n.2 (E.D. Mich. Sep. 27, 2007), the Court need not reach this issue, because it is sufficient to find that CIS has a duty to adjudicate plaintiff's application in a reasonable time. Pursuant to that duty, it may be incumbent upon CIS to ask the FBI to expedite plaintiff's name check or otherwise ensure that the FBI is acting within a reasonable time.

An "administrative agency cannot legitimately evade judicial review forever by continually postponing any consequence-laden action and then challenging federal jurisdiction on 'final agency action' grounds." *Nat'l Park* at 1239; *see also Cobell v. Norton*, 240 F.3d 1081, 1095 (D.C. Cir. 2001) ("As this court has noted in the past, where an agency is under an unequivocal statutory duty to act, failure so to act constitutes, in effect, an affirmative act that triggers 'final agency action' review.  Were it otherwise, agencies could effectively prevent judicial review of their policy determinations by simply refusing to take final action.") (internal citations and punctuation omitted); *Sierra Club v. Thomas*, 828 F.2d 783, 793 (D.C. Cir. 1987) (to deem withholding of action as unreviewable would permit the agency to "forever evade our review").  Thus, the Court finds that a failure to act on plaintiff's application for over two and one half years constitutes a "final agency action" under Section 704 of the APA.

For all of the foregoing reasons, the Court concludes that it has jurisdiction over plaintiff's claim under the federal question statute and the APA.

        2.      <u>Failure to State a Claim</u>

As stated above, "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b).  Defendants argue that if the agency is collecting information, it has not, as a matter of law, unreasonably delayed.  For this, they rely on *Nat'l Parks*. However, *Nat'l Parks* was decided on "final agency action" grounds, not on whether action had been unreasonably delayed.  Moreover, in *Nat'l Parks*, the government agency had actively prepared the very action plans plaintiff asserted the agency had a duty to prepare.

11

The court found that such planning could not be considered a lack of action that would constitute a final agency action. Here, the case is distinguishable.

> Moreover, although there is no statutory or regulatory deadline by which the CIS *must* adjudicate an application, at some point, defendants' failure to take any action runs afoul of section 555(b). Were it otherwise, the CIS could hold adjustment applications in abeyance for decades without providing any reasoned basis for doing so. Such an outcome defies logic - the CIS simply does not possess unfettered discretion to relegate aliens to a state of "limbo," leaving them to languish there indefinitely. This result is explicitly foreclosed by the APA. Thus, [the Court must consider] whether, under any set of facts that could be proved consistent with [plaintiff's] allegations, defendants' delay in adjudicating his adjustment application is "unreasonable" under the APA.

*Kim v. Ashcroft*, 340 F.Supp.2d 384, 393 (S.D. N.Y. 2004) (emphasis in original).

The Court finds that it cannot determine as a matter of law that the delay has not been unreasonable. *Totonchi v. Gonzalez*, 2007 U.S. Dist. LEXIS 59003, *14 (N.D. Oh. Aug. 13, 2007) (Wells, J.) (15 month delay is not necessarily reasonable or unreasonable as a matter of law; defendants' motion to dismiss was denied); *but see Tang v. Chertoff*, 493 F.Supp.2d 148 (D. Mass. 2007) (4 year delay is unreasonable as a matter of law; defendants were ordered to adjudicate plaintiff's application); *Chaudry v. Chertoff*, 2006 U.S. Dist. LEXIS at *5-6 (D. Minn. Sep. 18, 2006) (a 17 month delay was not unreasonable as a matter of law, especially where plaintiff alleged no unscrupulous actions or motives by the government); *cf. Zhang v. Sec'y of Homeland Security*, 2007 U.S. Dist. LEXIS 64754, *15 (N.D. Oh. Aug. 31, 2007) (Lioi, J.) (plaintiffs did not allege any facts indicating applications were unreasonably delayed; defendants' motion to dismiss was granted).

Defendants also argue that plaintiff's claim is unreviewable, because the action complained of is committed to CIS' discretion by law. As stated above, the Court finds that it

12

is not within CIS' discretion to fail to act on plaintiff's application indefinitely. To find otherwise would undermine the provisions of the APA itself. The Court denies defendants' motion to dismiss for failure to state a claim under the APA, because defendants have not established that the delay has not been unreasonable as a matter of law.

### B. Mandamus Statute

The mandamus statute provides: "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Defendants argue that plaintiff cannot state a claim because defendants have no clear, non-discretionary duty to adjudicate his application within a certain period of time. Before the Court reaches this argument, it must first determine whether or not it has subject matter jurisdiction over the mandamus claim.

#### 1. Subject Matter Jurisdiction

"The existence of jurisdiction under section 1361 is inextricably bound with the merits of whether a writ of mandamus should issue; in order to establish either jurisdiction or entitlement to the writ, a court must find that a duty is owed to the plaintiff." *Maczko v. Joyce*, 814 F.2d 308, 310 (6th Cir. 1987).[4,5] As discussed above, the Court finds that

---

[4] Defendants suggest, in a footnote, that the mandamus statute does not provide an independent basis for jurisdiction. The Court disagrees. The statute itself provides a statutory basis for jurisdiction where defendant owes a duty to plaintiff. 28 U.S.C. § 1361.

[5] The Court notes that in several cases, CIS has not disputed that it has a duty to adjudicate I-485 applications. *E.g., Singh v. Still*, 470 F.Supp.2d 1064, 1068 (N.D. Ca. 2006).

defendants do owe a clear, non-discretionary duty to adjudicate plaintiff's application in a reasonable time.[6] Thus, the Court has jurisdiction over plaintiff's mandamus claim. The Court now turns to the merits of plaintiff's claim.

### 2. Failure to State a Claim

Three conditions must be satisfied before mandamus may issue. The party seeking issuance must have no other adequate means of relief. *Cheney v. United States Dist. Court*, 542 U.S. 367, 381 (2004). Second, he must establish that his right to issuance is clear and indisputable. *Id.* Finally, the issuing court, in the exercise of its discretion, must be satisfied that mandamus is appropriate under the circumstances. *Id.* Stated another way, "[t]he common-law writ of mandamus, as codified in 28 U. S. C. § 1361, is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." *Heckler v. Ringler*, 466 U.S. 602, 616

---

[6] *Gershenzon v. Gonzalez*, 2007 U.S. Dist. LEXIS 68600 (W.D. Pa. 2007) (8 C.F.R. § 245.2(a)(5) provides the duty to act); *Duan v. Zamberry*, 2007 U.S. Dist. LEXIS 12697 (W.D. Pa. 2007) (Section 1252 does not preclude review); *Salehian v. Novak*, 2006 U.S. Dist. LEXIS 77028 (D. Conn. 2006) (APA provides the duty to act within a reasonable period of time); *Luo v. Coultice*, 2001 U.S. Dist. LEXIS 21288 (C.D. Cal. 2001) (8 C.F.R. § 103.2(b)(19) provides the duty to act); *Paunescu v. INS*, 76 F. Supp.2d 896 (N.D. Ill. 1999) (Section 1252 does not preclude review); *but see Shen v. Chertoff*, 494 F. Supp.2d 592 (E.D. Mich. 2007) (Section 1252 precludes review); *Safadi v. Howard*, 466 F. Supp. 2d 696 (E.D. Va. 2006) (same); *Kupferberg v. United States INS*, 1999 U.S. Dist. LEXIS 21168 (S.D. N.Y. 1999) (8 U.S.C. § 1255 provides that CIS *may* adjust status in its discretion); *Alomari v. Reno*, 1997 U.S. Dist. LEXIS 18299 (S.D. N.Y. 1997) (the "absence of any such [time] reference is consistent with, and confirmatory of, Congress' intent to confer on USCIS discretion over not just the adjustment of status decision, but also the process employed to reach that result, and to exclude from judicial review the exercise of all that discretion").

(1984).  Because the Court has already found that plaintiff may obtain relief via the APA, plaintiff has another adequate means of relief.  Accordingly, the Court grants defendants' motion to dismiss plaintiff's petition for writ of mandamus for failure to state a claim.

### C. Declaratory Judgment Act

While plaintiff's complaint asserted the Declaratory Judgment Act (the "D.J. Act") as a basis for jurisdiction, plaintiff now concedes that the D.J. Act does not provide an independent basis for subject matter jurisdiction.  *See Totonchi*, *8-9 (citing *Heydon v. MediaOne of Southeast Michigan*, *Inc.*, 327 F.3d 466, 470 (6th Cir. 2003)).  However, the D.J. Act does "provide[] courts with discretion to fashion a remedy."  *Id.*  Accordingly, the Court will disregard the plaintiff's previous assertion of jurisdiction on this ground.  *Id.*  But, the D.J. Act remains relevant as a basis for a remedy in this suit.

### **CONCLUSION**

For the foregoing reasons, defendants' motion to dismiss for lack of subject matter jurisdiction is DENIED.  Defendants' motion to dismiss for failure to state a claim under the APA is DENIED.  Defendants' motion to dismiss for failure to state a claim under the mandamus statute is GRANTED.

IT IS SO ORDERED.

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 10/31/07